380 A.2d 854

**COMMONWEALTH of Pennsylvania**

v.

**Thomas QUINLAN, Appellant.**

Superior Court of Pennsylvania.

Submitted June 28, 1976.

Decided Dec. 2, 1977.

430

[redacted]

Calvin S. Drayer, Jr., Assistant Public Defender, Norristown, for appellant.

Ross Weiss, First Assistant District Attorney, Elkins Park, and William T. Nicholas, District Attorney, Norristown, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge:

In this appeal appellant contends that in several instances he was not afforded due process in connection with the revocation of his probation. We conclude otherwise and affirm the lower court's order.

On November 26, 1974, following guilty pleas to the crimes of burglary, theft, receiving stolen property, possession of instruments of crime, and conspiracy, appellant was placed on probation for a total of nineteen years with the condition that he refrain from consuming alcohol during this period. In addition, appellant was committed to Haverford State Hospital until cured of alcoholism. Less than ten months later, on August 12, 1975, appellant was arrested in Delaware County and charged with rape and other offenses. As a result of this arrest, the Montgomery County Probation Office filed a notice of probation violation. Shortly thereafter, a preliminary hearing was held on the Delaware County charges and a prima facie case was established. Following a *Gagnon II* hearing on November 13, 1975, appellant's probation was revoked and he was sentenced to a prison term of five to fifteen years on the original charges

of burglary, theft, and receiving stolen property. A consecutive term of imprisonment of two to four years was imposed on the criminal conspiracy charge. This appeal followed.

In *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) the United States Supreme Court held that an alleged probation violator is entitled to certain due process safeguards before probation may be revoked. Included among these several protections are: (1) written notice of the claimed violations of probation: (2) disclosure to the probationer of the evidence against him; and, (3) the right to confront and cross-examine adverse witnesses (unless the judge specifically finds good cause for not allowing confrontation). *Id.* at 786, 93 S.Ct. 1756. See also *Commonwealth v. Davis*, 234 Pa.Super. 31, 336 A.2d 616 (1975). In the case at bar, appellant contends he was not afforded the above three due process safeguards.

Initially, appellant argues he is entitled to a new *Gagnon II* hearing because the record does not reflect his having received written notice of the alleged probation violations. See *Commonwealth v. Kile*, 237 Pa.Super. 72, 346 A.2d 793 (1975); *Commonwealth v. Stratton*, 235 Pa.Super. 566, 344 A.2d 636 (1975); *Commonwealth v. Henderson*, 234 Pa.Super. 498, 340 A.2d 483 (1975); *Commonwealth v. Alexander*, 232 Pa.Super. 57, 331 A.2d 836 (1975). It is important to note, however, that appellant does not contend he never in fact received written notice, but only that the record does not verify receipt.[1] In our opinion such a distinction is too fine. We hold that the dispositive consideration is whether notice was in fact received. In this connection, the Com-

---

1. The record neither contradicts nor confirms receipt, it is simply silent on the matter. The reason for this void is that the issue of notice was never raised below. In *Commonwealth v. Alexander*, supra, we held that the issue of notice is not waived even where the probationer fails to object to this defect at the revocation hearing. Thus, the probationer's attorney is acting in his client's best interests by remaining silent and preserving an issue for appeal. While this does not excuse the Commonwealth's failure to independently assure that the record evidences appellant's receipt of written notice, it does shed light on the recurring nature of this problem.

monwealth has submitted as an appendix to its brief a letter from the Montgomery County Adult Probation-Parole Department to appellant charging him with violating probation, because (1) he was arrested and charged with rape and various other crimes arising from that criminal episode; and (2) he consumed alcoholic beverages. Moreover, appellant acknowledged receipt of this violation letter with his signature. Accordingly, we find that the requirement of written notice of the charges has been satisfied.

Appellant next contends he was denied due process of law by the Commonwealth's failure to disclose the evidence against him. This contention is equally without merit. At the *Gagnon II* hearing the Commonwealth presented the testimony of appellant's probation officer and that of the two police officers who investigated the alleged rape in Delaware County. Their testimony comprised the entire case against appellant, who was present when these witnesses testified and was given full opportunity to cross-examine. Apparently, appellant feels he was entitled to have the evidence against him disclosed in advance of the revocation hearing, but no authority is cited to support this proposition nor has our research disclosed any. To accept appellant's contention would give a greater right of discovery to an alleged probation violator than is currently accorded defendants in criminal prosecutions. See Pa.R.Crim.P., Rule 310. In short, we are of the view that this rule relating to disclosure is simply intended to assure that at the revocation hearing the probationer is confronted with all of the evidence upon which any decision to revoke could be based. Instantly, the decision to revoke was predicated upon the Commonwealth's evidence relative to the new charges and appellant's consumption of alcohol. Since appellant was provided with written notice of these alleged violations and was present when the evidence relating to the violations was adduced, he was not denied due process.

Appellant's final contention is that he was denied the right to confront and cross-examine adverse witnesses. This contention is grounded upon the fact that the victim of the

alleged rape did not testify. All of the Commonwealth's evidence concerning the circumstances surrounding the rape and appellant's subsequent arrest was presented through the testimony of the arresting and investigating officers. While a large portion of the officers' testimony was undoubtedly hearsay, the hearing judge, in accordance with *Gagnon v. Scarpelli*, supra, found good cause for not allowing confrontation.[2] Specifically, the hearing judge found that to compel the victim to testify would subject her to unnecessary embarrassment and harassment. In his written opinion the judge further notes that the victim was cross-examined at great length by appellant's counsel at the preliminary hearing. In addition, as both the hearing judge and the Commonwealth point out, there is no allegation that the victim was not equally available to appellant had he wished to subpoena her. See *Commonwealth v. Kates*, 452 Pa. 102, 305 A.2d 701 (1973).

Furthermore, the best evidence that appellant had violated probation was his own testimony. Appellant candidly admitted that, although he realized his probation was conditioned upon his refraining from alcohol, he nevertheless resumed drinking not long after being placed on probation. In fact, appellant admitted to drinking virtually the entire day prior to the rape, which occurred in the early morning hours of the following day. With respect to the rape, appellant testified he only simulated intercourse and wanted to help the victim but was fearful of his companion, William Caley, who, according to appellant, was the principal in the crime and forced appellant to participate.[3] Appellant further testified that because of his fear of Caley and his own inebriated condition, he was precluded from rendering any assistance while Caley raped and beat the victim.

2. See also *Commonwealth v. Ball*, 235 Pa.Super. 581, 344 A.2d 675 (1975); *Commonwealth v. Davis*, supra.

3. Appellant's companion, William Caley, was an escaped murderer from Berks County Prison. Appellant admitted to voluntarily drinking with Caley the entire day and bringing him back to his apartment where the rape took place. Appellant could not clearly state when he first learned Caley was an escaped felon.

■ In light of appellant's testimony, we are of the opinion that, apart from any evidence which might have been deemed inadmissible if the rules of evidence were given rigid application in revocation hearings, there existed sufficient competent and probative evidence to warrant revocation.[4]

Judgment affirmed.

HOFFMAN, J., files a dissenting opinion in which SPAETH, J., joins.

PRICE, J., files a dissenting opinion.

HOFFMAN, Judge, dissenting:

Appellant contends that the Commonwealth failed to comply with due process requirements in his probation revocation hearing. Specifically, he alleges that there is no evidence in the record to show that he received written notice of the probation violations. I agree and would, therefore, reverse and remand for another probation revocation hearing.

On November 26, 1974, after appellant pleaded guilty in a Montgomery County Court of Common Pleas, the court sentenced him to 15 years' probation on a charge of burglary,[1] and to a consecutive 4 years' probation on a charge of criminal conspiracy.[2] On the charge of possession of an instrument of crime,[3] the court committed appellant to the Haverford State Hospital until cured of alcoholism. As a specific condition of probation, the court stated that appel-

---

**4.** Appellant also argues his right of confrontation was further abridged when he was denied access to a statement he gave to the officers investigating the rape. We need not reach this question in view of our conclusion that appellant's own testimony supplied ample justification for revoking probation.

**1.** The Crimes Code, Act of December 6, 1972, P.L. 1482, No. 334, § 1, eff. June 6, 1973; 18 Pa.C.S. § 3502.

**2.** The Crimes Code, supra; 18 Pa.C.S. § 903.

**3.** The Crimes Code, supra; 18 Pa.C.S. § 907.

lant could not partake of any alcoholic beverage unless prescribed by a physician.

On August 12, 1975, Radnor police officers arrested appellant in Delaware County and charged him with rape,[4] simple assault,[5] terroristic threats,[6] and recklessly endangering another person.[7] On August 20, 1975, after a preliminary hearing before a District Justice appellant was bound over for Grand Jury action. On November 13, 1975, after a hearing, the Montgomery County Court revoked appellant's probation[8] and sentenced him to a 5 to 15 year term of imprisonment for burglary and a consecutive 2 to 4 year term of imprisonment for criminal conspiracy. This appeal followed.

Appellant contends that the lack of written notice on the record deprived him of due process of law. In *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 652 (1973), the United States Supreme Court held that an alleged probation violator is entitled to certain due process rights before his probation can be revoked. A probationer is entitled to a preliminary and a final revocation hearing.

"At the preliminary hearing, a probationer or parolee is entitled to notice of the alleged violations of probation or parole, an opportunity to appear and to present evidence in his own behalf, a conditional right to confront adverse witnesses, an independent decisionmaker, and a written report of the hearing. [*Morrissey v. Brewer*] 408 U.S. [471], at 487, 92 S.Ct. [2593] at 2603, [33 L.Ed.2d 484]. The final hearing is a less summary one because the decision under consideration is the ultimate decision to revoke rather than a

4. The Crimes Code, supra; 18 Pa.C.S. § 3121.

5. The Crimes Code, supra; 18 Pa.C.S. § 2701.

6. The Crimes Code, supra; 18 Pa.C.S. § 2706.

7. The Crimes Code, supra; 18 Pa.C.S. § 2705.

8. The Crimes Code, supra; 18 Pa.C.S. § 1371, provides authority for the revocation of probation. See also, Pa.R.Crim.P. 1409.

mere determination of probable cause, but the 'minimum requirements of due process' include very similar elements: '(a) written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation or] parole.' *Morrissey v. Brewer,* supra." *Gagnon,* supra at 786, 93 S.Ct. at 1761–62.[9]

These requirements serve as substantial protection against ill-considered revocation. Pennsylvania courts have frequently applied these standards to probation and revocation proceedings. *Commonwealth v. Stratton,* 235 Pa.Super. 566, 344 A.2d 636 (1975); *Commonwealth v. Davis,* 234 Pa.Super. 31, 336 A.2d 616 (1975); *Commonwealth v. Alexander,* 232 Pa.Super. 57, 331 A.2d 836 (1974). In *Stratton,* supra 235 Pa.Super. at 569, 344 A.2d at 638, we stated: " . . . *Gagnon* requires, *inter alia,* that written notice of the alleged probation violations be furnished to the defendant as part of the *Gagnon II* hearing. There is no evidence *in the record* to show that the appellant received written notice. The probation revocation hearing, therefore, did not satisfy the requirements of due process." (Emphasis added). In *Alexander,* supra, the appellant's parole officer testified that he had orally informed appellant of the alleged probation violations. We reversed and remanded because the record did not reflect that appellant had received written notice of the claimed violations and thus, the Commonwealth did not

**9.** The United States Supreme Court first articulated these standards in a case involving parole revocation. *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

satisfy the minimum due process requirements of *Gagnon.* See also, *Commonwealth v. Martin,* 241 Pa.Super. 222, 360 A.2d 733 (1976); *Commonwealth v. Kile,* 237 Pa.Super. 72, 346 A.2d 793 (1975); *Commonwealth v. Henderson,* 234 Pa.Super. 498, 340 A.2d 483 (1975). I believe that *Alexander* and *Stratton* control the instant case. The Commonwealth concedes that there is nothing in the record before our Court which indicates that appellant received written notice of the alleged probation violations. Moreover, in a probation revocation hearing, the Commonwealth bears the burden of proof. Although proof beyond a reasonable doubt is not required, the Commonwealth must establish a record to demonstrate that it complied with the minimum due process requirements of *Gagnon.*

The Majority attempts to distinguish this Court's prior case law. They hold that "the dispositive consideration is whether notice was in fact received." (At 431). The Majority then notes that, as an appendix to its brief, the Commonwealth submitted a letter from the Montgomery County Adult Probation-Parole Department to appellant which charges him with violating his probation. This letter is not a part of the record. Based upon this letter, our Court finds that appellant in fact received written notice of the alleged violations, thus satisfying the requirements of due process. I have examined the letter and it is completely illegible.

I am compelled to dissent from the dangerous precedent the Majority sets in considering evidence completely *de hors* the record. One of the fundamental tenets of our judicial system is that a court may only consider evidence properly before it. "The right of a litigant to in-court presentation of evidence is essential to due process." *Commonwealth ex rel. Valentine v. Strongel,* 246 Pa.Super. 466, 371 A.2d 931 (1977). Accordingly, a court is not permitted to base its findings on evidence that is not in the record. See *Wood v. Tucker,* 231 Pa.Super. 461, 332 A.2d 191 (1974); *Commonwealth ex rel. Oncay v. Oncay,* 153 Pa.Super. 569, 34 A.2d 839 (1943).

In the instant case, there is nothing in the record before us which indicates that appellant received written notice of alleged probation violations. Therefore, I believe that the Commonwealth has failed to comply with the requirements of *Gagnon v. Scarpelli*, supra. Any consideration of the letter appended to the Commonwealth's brief is entirely inappropriate and violates essential due process requirements. I would reverse and remand for a new probation revocation hearing.

SPAETH, J., joins in this dissenting opinion.

PRICE, Judge, dissenting:

The majority alternatively holds (1) that there is no requirement that written notice be placed in the record in every case and (2) that the fact of actual receipt was established by the written notice attached to the Commonwealth's brief. Although I disagree with the latter holding because it gives undue effect to matters dehors the record, I completely agree with the former holding. I dissent, however, because I believe that appellant has sufficiently raised the issue of whether he in fact received written notice, and therefore the majority's first holding does not dispose of the case.

Appellant phrases the issue as whether "[he was] denied due process of law since it nowhere appears in the record that he received written notice of the claimed violations of probation." (Appellant's Brief at 3). In my view there never has been a requirement that written notice appear in the record unless the issue was raised below. I, therefore, find appellant's statement of the issue ambiguous and, *for the purpose of this appeal*, would treat it as if he contends that he was never afforded such notice. I would remand this case for a determination of whether written notice was, in fact, provided.

In *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) and *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the Supreme Court estab-

lished the minimal requirements of due process in probation and parole revocation cases. Prior to revocation, the Commonwealth must, *inter alia*, provide the probationer or parolee with written notice of the alleged violations which form the basis of the revocation proceeding. The obvious purpose of this rule is to provide the probationer with notice of the charges against which he must defend. *Gagnon* and *Morrissey*, however, contain no requirement that the Commonwealth place proof of notice on the record. The administration of these constitutionally required procedures is left to the states.

This court has repeatedly held that the Commonwealth must strictly comply with the requirement that notice of the alleged violations be in writing. *See, e. g., Commonwealth v. Martin*, 241 Pa.Super. 222, 360 A.2d 733 (1976); *Commonwealth v. Stratton*, 235 Pa.Super. 566, 344 A.2d 636 (1975); *Commonwealth v. Henderson*, 234 Pa.Super. 498, 340 A.2d 483 (1975); *Commonwealth v. Davis*, 234 Pa.Super. 31, 336 A.2d 616 (1975); *Commonwealth v. Alexander*, 232 Pa.Super. 57, 331 A.2d 836 (1974). As Judge Hoffman points out, we ruled, in *Commonwealth v. Stratton, supra* 235 Pa.Super. at 569, 344 A.2d at 638, that "*Gagnon* requires, *inter alia*, that written notice of the alleged probation violations be furnished to the defendant  .   . .. There is no evidence *in the record* to show that the appellant received written notice. The probation revocation hearing, therefore, did not satisfy the requirements of due process." (Emphasis added). In *Commonwealth v. Stratton, supra*, however, the appellant never received written notice. An examination of dissenting opinions in *Stratton* reveals that the issues on appeal concerned whether a criminal conviction could be a proper substitute for written notice and whether written notice could be waived by failure to object at the revocation hearing. *Stratton* does not stand for the proposition that notice must be placed on the record. Our research reveals no case in which the Commonwealth contended on appeal that written notice was in fact given. *See e. g., Common-*

*wealth v. Kile,* 237 Pa.Super. 72, 346 A.2d 793 (1975); *Commonwealth v. Henderson, supra; Commonwealth v. Alexander, supra.*

In his dissenting opinion, Judge Hoffman objects to the consideration of matters outside the record. I agree that we should not decide a factual question based on facts presented, for the first time, in an appendix to a brief. It must be remembered, however, that the relevant facts were not presented to the lower court because the issue was not raised at that point in the case. Because of the "informal" nature of the hearing, we have heretofore declined to consider issues waived even if they have not been presented at the probation revocation hearing. *Commonwealth v. Alexander, supra.* Nevertheless, I find it totally improper to penalize the Commonwealth for failing to introduce facts directed toward a non-contested issue not relating to the substantive violations.

It may be that a rule requiring on-the-record proof would prove easier to apply and ultimately reduce the number of appeals to this court.[1] Whether or not this is true is immaterial. This court has no supervisory power and therefore cannot issue such a rule. *See Commonwealth v. Jones,* 245 Pa.Super. 487, 369 A.2d 733 (1977).

1. It may be that it is time to re-evaluate the proper relationship of waiver to counseled revocation hearings. In *Commonwealth v. Alexander,* 232 Pa.Super. 57, 61–62, 331 A.2d 836, 838 (1974) (majority opinion by Price, J.), we held that waiver did not apply to probation cases. This decision was based in large part on the following language from the decision in *Commonwealth v. Kates,* 452 Pa. 102, 118–19, 305 A.2d 701, 710 (1973):

    "Neither *Morrissey,* nor any other decision that has come to our attention, requires that a revocation hearing be conducted with the same procedural and evidentiary rules as would apply to a [criminal] trial . . . . *In this area of rights of probationers and parolees the controlling factor is not whether the traditional rules of evidence or procedure including Fourth and Fifth Amendment exclusionary rules, have been strictly observed, but rather whether the probative value of the evidence has been affected.*"

    Perhaps, as Judge Jacobs suggested in his dissenting opinion in *Commonwealth v. Stratton,* 235 Pa.Super. 566, 344 A.2d 636 (1975), this language does not foreclose traditional concepts of waiver based on the failure to raise an issue in the lower court.

Moreover, such a requirement may not prove easy to apply in other situations. For example, this court has recently been besieged by a host of speedy hearing claims under Pa.R.Crim.P. 1409 and *Commonwealth v. White*, 218 Pa.Super. 188, 279 A.2d 768 (1971). In his dissenting opinion, Judge Hoffman would hold that "the Commonwealth must establish a record to demonstrate that it complied with the minimum due process requirements of *Gagnon*." (At 437). I can perceive no rational basis for distinguishing between written notice and speedy hearing cases.[2] Any requirement that the Commonwealth prove compliance with Rule 1409 when the issue has never been raised would be extremely wasteful. In addition, failure by the Commonwealth to comply with such a requirement could result in discharge even when the speedy hearing claim is substantively without merit. Judge Hoffman's rule would therefore create a dangerous precedent.

Finally, from the perspective of the lower court and the witnesses who must attend any new hearings, it would be substantially easier to provide a hearing limited to the issue of whether written notice was actually provided.[3] From an appellate perspective it is no more difficult to remand for a limited hearing on the notice issue than for a full *Gagnon II* hearing. This remedy would of course be limited to those situations where the appellant raises lack of notice for the first time on appeal and the Commonwealth contends, in its brief, that written notice was provided.[4]

I would reverse the judgment of sentence and remand the case for proceedings consistent with this opinion.

2. In *Morrissey v. Brewer*, 408 U.S. 471, 488, 92 S.Ct. 2593, 2603–04, 33 L.Ed.2d 484 (1972), the Supreme Court noted that "[t]he revocation hearing must be tendered within a reasonable time after the parolee is taken into custody." *See also Moody v. Daggett*, 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976).

3. If the lower court finds that notice was given, appellant could appeal that decision. If notice was not given, appellant would be entitled to a second *Gagnon II* hearing.

4. By remanding in this situation, we would avoid the problem of deciding a matter based on evidence dehors the record.